UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANNA M. HOWELL,

    Plaintiff,

v.                                                                             Case No: 8:16-cv-745-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

    Plaintiff, Shanna M. Howell, seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## **BACKGROUND**

    **A.**    **Procedural Background**

    Plaintiff filed an application for a period of disability and disability insurance benefits on July 18, 2012. (Tr. 185.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 77, 95.) Plaintiff then requested an administrative hearing. (Tr. 107.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 37–65.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 19–30.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–4.) Plaintiff then

timely filed a complaint with this Court. (Dkt. 1) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

B.      **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1971, claimed disability beginning on March 14, 2012. (Tr. 185.) Plaintiff has a limited education. (Tr. 190.) Plaintiff's past relevant work experience included work as a lab technician and a phlebotomist. (Tr. 29.) Plaintiff alleged disability due to dyslexia, anxiety, depression, fibromyalgia, body pain, left heel pain, left knee pain, feet pain, neck pain, lower back pain, weight gain, sleep apnea, Epstein-Barr, and chronic fatigue. (Tr. 189.)

In rendering the decision, the ALJ concluded that Plaintiff has not performed substantial gainful activity since March 14, 2012, the alleged onset date. (Tr. 24.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc/joint disease, fibromyalgia, diabetes mellitus, sleep apnea, obesity, anxiety disorder, major depressive disorder, history of learning disorder, and personality disorder. (Tr. 24.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work. (Tr. 26.) The ALJ further restricted Plaintiff's RFC, finding that Plaintiff has the mental limitation that allows her to retain the ability to get to work and remember work procedures and is able to perform jobs that require no more than one month to learn. The ALJ further found that Plaintiff is able to maintain attention and concentration for two hours at a time, show up on time, work within a schedule, and attend work regularly. The ALJ also concluded that Plaintiff is able to ask a supervisor or fellow workers for assistance and retains the ability to adhere to basic standards of

neatness and cleanliness and to use public transportation and travel to unfamiliar places. (Tr. 26.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 27.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform her past relevant work. (Tr. 29.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a telephone order clerk, a call out operator, and a clerical assistant. (Tr. 30.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 30.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an

individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing

court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to adopt the opinion of consulting physician Dr. Daniel Van Ingen; (2) the ALJ failed to account for Plaintiff's social functioning limitations in the RFC assessment; and (3) the ALJ failed to properly weigh the opinion of treating physician Dr. Frederic Monosiet. For the reasons that follow, none of these contentions warrant reversal.

### A.     Adoption of Dr. Van Ingen's Opinions

Plaintiff first argues that although the ALJ afforded consulting physician Dr. Van Ingen's opinion significant weight, the ALJ failed to adopt Dr. Van Ingen's opinion. Specifically, Plaintiff contends that the ALJ failed to adopt portions of Dr. Van Ingen's opinion supporting disability into Plaintiff's RFC. (Dkt. 18 at 15.) Plaintiff asserts that although the ALJ assigned moderate limitations in social functioning and concentration, persistence and pace, the only mental functioning limitation in Plaintiff's RFC is that Plaintiff can perform jobs that require no more than one month to learn. (Dkt. 18 at 12.) Plaintiff further argues that the ALJ failed to account for Dr. Van Ingen's opinion that Plaintiff's mental impairment would impact her ability to maintain attention and concentration and her ability to get along with others, as well as cause significant difficulties in Plaintiff's ability to deal with stress. (Dkt. 18 at 16.)

Dr. Van Ingen performed a consultative examination on Plaintiff on October 23, 2012. In his mental status examination report, Dr. Van Ingen noted that Plaintiff's demeanor and responsiveness to questions were cooperative, and her manner of relating, social skills, and overall presentation were adequate. (Tr. 531.) Specifically, Plaintiff's thought process was coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking. Her mood was depressed and anxious, but her intelligibility was fluent. (Tr. 531.) Plaintiff's attention and concentration were noted as limited. Her recent and remote memory skills appeared to be impaired due to distress secondary to her anxiety disorder. (Tr. 531.) Plaintiff's cognitive functioning was in the average range and her insight and judgment were fair to good. (Tr. 532.)

In his medical source statement, Dr. Van Ingen opined that vocationally, Plaintiff appears to be capable of understanding and following simple instructions and directions. (Tr. 532.) Plaintiff appeared capable of performing simple tasks independently. Dr. Van Ingen noted that while she may have difficulty maintaining attention and concentration due to symptoms of her anxiety disorder, she is capable of maintaining a regular schedule and learning new tasks. (Tr. 532.) Further, Plaintiff has a "fair capability for relating adequately with others, but appears to be affected by her anxiety and mood symptoms." She appeared to have a fair capability for making appropriate decisions, but had significant difficulty coping with "stressors." (Tr. 532.) In Dr. Van Ingen's diagnosis, Plaintiff was diagnosed with posttraumatic stress disorder, major depressive disorder, methamphetamine abuse, learning disorder, personality disorder, and assigned a GAF score of 45. (Tr. 532–533.)

Medical opinions, which include physician statements regarding the nature and severity of the claimant's impairments, may support the ALJ's determination of whether a claimant suffers from a severe impairment. 20 C.F.R. § 404.1527(a)(2). When assessing the medical evidence, the

ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). In determining the weight to afford a medical opinion, the ALJ considers the following factors: the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015).

Here, Dr. Van Ingen is a consultative examiner and, as such, his opinions are not entitled to the deference normally given treating sources. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that opinions of consultative examining physicians "are not entitled to deference because as one-time examiners they were not treating physicians"); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160–161 (11th Cir. 2004) ("The ALJ correctly found that, because [a consultative examiner] examined [claimant] on only one occasion, her opinion was not entitled to great weight."); 20 C.F.R. § 404.1527(c)(2) (explaining that treating sources are given greater weight because their opinions "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Dr. Van Ingen is not Plaintiff's treating physician, rather he examined Plaintiff to provide opinions as to Plaintiff's social security applications. Thus, although the ALJ accorded Dr. Van Ingen's significant weight, the opinion was not entitled to significant weight.

In assessing Plaintiff's RFC, the ALJ noted that overall, Dr. Van Ingen opined that Plaintiff retains the ability to perform work that is simple in nature and consistent with the RFC as outlined

in the ALJ's opinion. (Tr. 28.) The ALJ specifically addressed the portions of Dr. Van Ingen's opinion regarding Plaintiff's limited attention and concentration and impaired memory, but also noted that Plaintiff is independent with her personal care and household chores and reported engaging in activities such as going to church with her family and spending time with friends. (Tr. 28.) The ALJ further noted that Plaintiff was cooperative with adequate social skills and presentation, appropriate grooming, normal thought process, full orientation, intact cognitive functioning and average intelligence despite her reported history of learning disorders. (Tr. 28.)

Plaintiff argues that the ALJ only "selectively credited" Dr. Van Ingen's opinion. (Dkt. 18 at 13.) However, there is no requirement that the ALJ specifically refer to every piece of evidence from Plaintiff's medical records in her decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Rather, the district court must review the ALJ's decision and determine whether the ALJ considered the plaintiff's medical condition as a whole and also determine whether the ALJ's conclusion, as a whole, was supported by substantial evidence in the record. *Id.* (quoting *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995)). Substantial evidence is something "more than a mere scintilla, but less than a preponderance." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

Moreover, despite Plaintiff's argument that the only mental limitation contained in Plaintiff's RFC was a limitation to jobs requiring no more than one month to learn, the ALJ included multiple limitations that take into account Plaintiff's mental health. As the Commissioner argues, the ALJ's RFC assessment reflects the work Plaintiff is able to do despite her mental limitations. (Dkt. 21 at 6.) Notably, the ALJ included a limitation for Plaintiff's ability to maintain attention and concentration for only two hours at a time. (Tr. 26.) The ALJ further included that Plaintiff has "the mental limitation that allows her to retain the ability to get to the work place and

remember work procedures," is able to get to work on time, work within a schedule, attend work regularly, adhere to basic standards of neatness and cleanliness, use public transportation, and travel to unfamiliar places. (Tr. 26.) With regard to Plaintiff's social functioning, the ALJ specified that Plaintiff is able to ask a supervisor or fellow worker for assistance. (Tr. 26.) Thus, the ALJ included multiple mental limitations in Plaintiff's RFC, including those for Plaintiff's ability to maintain attention and concentration and to get along with others.

Plaintiff next argues that the ALJ failed to mention that Dr. Van Ingen assigned Plaintiff a GAF score of 45, a score that indicates Plaintiff is unable to carry out the basic duties of regular employment. (Dkt. 18 at 15.) Plaintiff believes that the GAF score is evidence that Dr. Van Ingen would not have agreed with the ALJ's impression of his opinion. Plaintiff further states that the GAF score is evidence that the ALJ misinterpreted Dr. Ingen's opinion as the opinion is far more limiting than Plaintiff's RFC, an inconsistency which the ALJ never explained. (Dkt. 18 at 15.)

The Commissioner argues that the GAF score does not have a direct correlation to the severity requirements in mental disorder listings. (Dkt. 21 at 6.) The Commissioner has declined to endorse the GAF scale for use in disability programs. Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01; *see Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x. 683, 690 (11th Cir. 2013). Further, absent evidence that an examiner assigned a GAF score based on an opinion regarding the claimant's ability to work, an ALJ's failure to mention and specifically weigh a GAF score does not warrant reversal. *See McGregor v. Astrue*, No. 8:08-cv-2361-T-TGW, 2010 WL 138808, at *3 (M.D. Fla. Jan. 12, 2010) *Bruner v. Comm'r of Soc. Sec.*, No. 8:08-cv-1744-T-27GJK, 2009 WL 3052291 (M.D. Fla. Sept. 23, 2009). As noted by the Commissioner, Dr. Van Ingen did not explain why he assessed a GAF score of 45 and, instead, gave a narrative opinion on Plaintiff's vocational abilities. The ALJ addressed Dr. Van

Ingen's opinion and included it within the RFC assessment. (Dkt. 21 at 8.) Consequently, the Plaintiff's argument does not warrant reversal.

Plaintiff also argues that other than finding it to be a severe impairment, the ALJ failed to discuss Plaintiff's dyslexia, which Dr. Van Ingen identified in her report. (Dkt. 18 at 16.) However, the ALJ considered Plaintiff's allegations and noted that although she has a history of learning disorder, Plaintiff exhibited average intelligence. (Tr. 24–25, 28.) Moreover, Plaintiff has not identified any work-related limitations related to her dyslexia. Plaintiff bears the burden of showing that she has a severe impairment or combination of impairments that may qualify as a disability. *Hutchinson v. Astrue*, 408 F. App'x. 324, 326 (11th Cir. 2011) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Proof of the mere existence of an impairment does not prove the extent to which the impairment may limit Plaintiff's ability to work. *Hutchinson*, 408 F. App'x. at 326. Here, Plaintiff points to no medical evidence indicating that Plaintiff's dyslexia affected her ability to work.

Plaintiff next argues that the ALJ failed to include any specific findings regarding Plaintiff's ability to cope with stress in Plaintiff's RFC. (Dkt. 18 at 17.) According to Plaintiff, this is significant because Dr. Van Ingen opined that Plaintiff would have difficulties dealing with stress and the definition of unskilled work does not contain a limitation to low stress work. Plaintiff argues that the ALJ was required to make an explicit determination regarding the effect of this limitation on Plaintiff's range of employment. (Dkt. 18 at 17.) The Commissioner argues, and the

Court agrees, that according to Social Security Ruling 85-15, "stress" is defined as "the demands of work" and can result in limitations on the ability to meet the various demands of work:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question. Thus, the mentally impaired may have difficulty meeting the requirements of even so-called 'low-stress' jobs.
>
> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. For example, a busboy need only clear dishes from tables. But an individual with a severe mental disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons. Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15 (S.S.A. 1985). Here, the ALJ specifically addressed Plaintiff's ability to cope with the demands of work in the RFC assessment, including that Plaintiff is able to get to work, show up on time, work within a schedule, attend work regularly, and ask a supervisor for assistance. (Tr. 26.) Therefore, Plaintiff's argument does not warrant reversal.

Plaintiff also argues that the ALJ misread Dr. Van Ingen's opinion. (Dkt. 18 at 15.) However, substantial evidence supports the ALJ's interpretation of Dr. Van Ingen's opinion and the conclusion that Plaintiff can perform sedentary work with the additional limitations found in

Plaintiff's RFC.  As noted above, the RFC reflects much of Dr. Van Ingen's opinion.  Further, the state agency mental experts opined that Plaintiff retains the ability to perform less than a full range of light work with limitations in social and cognitive functioning.  (Tr. 74, 92.)  The ALJ assigned the opinions significant weight and further reduced Plaintiff to sedentary work based on Plaintiff's testimony.  (Tr. 28.)  To the extent that Plaintiff points to other evidence which would undermine the ALJ's RFC determination, this argument misinterprets the narrowly circumscribed nature of the court's appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner]…even if the evidence preponderates against" the decision. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Bloodsworth,* 703 F.2d at 1239).  This court may not reweigh the evidence and decide facts anew and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it. *See Dyer*, 395 F.3d at 1210.

### B. The ALJ's Assessment of Plaintiff's Social Functioning Limitations

Plaintiff next contends that the ALJ failed to incorporate his findings that Plaintiff has moderate social functioning limitations in the RFC assessment.  (Dkt. 18 at 18.)  However, the ALJ's finding regarding Plaintiff's moderate difficulties in social functioning was one of the four ratings the ALJ made pursuant to the psychiatric review technique form used in assessing mental impairments. (Tr. 25.)  "Agency regulations require the ALJ to use the 'special technique' dictated by the [Psychiatric Review Technique Form] PRTF for evaluating mental impairments." *Moore*, 405 F.3d at 1213; 20 C.F.R. § 404.1520a (effective June 13, 2011).  Utilization of the special technique requires separate evaluations concerning how the claimant's mental impairment impacts four functional areas:  "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  *Moore*, 405 F.3d at 1213–14; 20 C.F.R. §

404.1520a(c)(3). The PRTF is not an assessment of Plaintiff's RFC. 20 C.F.R. §§ 404.1520(a)(4), 404.1520a(d); SSR 96-8p.

Here, as the Commissioner notes, the ALJ properly used the PRTF ratings to find at step two of the sequential process that Plaintiff has severe mental impairments, but does not have an impairment that meets or equals a listed impairment. (Dkt. 21 at 10.) The ALJ then properly continued on to step three and assessed Plaintiff's RFC. (Tr. 26.) Plaintiff contends that the ALJ did not include findings in the RFC that relate to working with others, supervisors, or the public. (Dkt. 18 at 20–21.) But, the ALJ specifically addressed Plaintiff's ability to work with others and supervisors in the RFC in finding that Plaintiff is able to ask a supervisor or fellow worker for assistance. (Tr. 26.) Thus, Plaintiff's contention does not warrant reversal.

### C. Weight Accorded to Dr. Monosiet's Opinions

Plaintiff's final argument is that the ALJ improperly assigned the opinion of treating psychiatrist Dr. Monosiet little weight. According to Plaintiff, the records and medical source statement from Dr. Monosiet's treatment were obtained subsequent to the hearing but prior to the ALJ's written opinion. (Dkt. 18 at 22.) Plaintiff indicates that additional progress notes were submitted to the Appeals Council that reveal two more visits with Dr. Monosiet in June 2014. (Dkt. 18 at 22.) Plaintiff asserts that if credited, the medical source statement would require a finding of disability. (Dkt. 18 at 22.) At the hearing, Plaintiff testified that she treated with Dr. Monosiet every three months. (Tr. 49.) Plaintiff argues that the ALJ mischaracterized Dr. Monosiet's relationship with Plaintiff and failed to recognize Dr. Monosiet as a treating physician. (Dkt. 22 at 23.) The Commissioner, in contrast, argues that the ALJ properly considered Dr. Monosiet's opinion and had good cause for assigning the opinion little weight as it was conclusory and not based on any examination findings. (Dkt. 21 at 12.)

A treating physician's opinion is "given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). An ALJ's failure "to clearly articulate the reasons for giving less weight to the opinion of a treating physician" is reversible error. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for giving a treating physician's opinion less weight "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–1241 (11th Cir. 2004). Ultimately, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

Here, the ALJ assigned Dr. Monosiet's opinion little weight, noting that the extent of the treatment relationship between Plaintiff and Dr. Monosiet was unclear. (Tr. 28.) The ALJ indicated that although Dr. Monosiet noted that Plaintiff had various impairments, Plaintiff had not sought treatment for many of the impairments during the time period relevant to the ALJ's decision. (Tr. 28.) The ALJ recognized Dr. Monosiet's opinion that Plaintiff has marked limitations in activities of daily living, social functioning, and concentration, persistence, and pace, but ultimately found the opinion conclusory. The ALJ reasoned that Dr. Monosiet's opinion does not reference any examination findings and appeared to be based solely on Plaintiff's subjective complaints. (Tr. 28.)

The record in this case reflects that Dr. Monosiet completed a mental status examination of Plaintiff on March 27, 2014, finding Plaintiff alert, cooperative, and oriented as to time and place with no evidence of delusions or paranoia. (Tr. 563.) She had difficulty coping at times but denied an intent toward self-harm or harm towards others. Further, her judgment appeared fair

and her memory seemed intact. (Tr. 563.) The only other record from Dr. Monosiet before the ALJ at the time of his decision was a medical source statement dated June 26, 2014. (Tr. 612–614.) Within the medical source statement, Dr. Monosiet opined that Plaintiff has a marked restriction in activities of daily living, marked difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence, or pace. (Tr. 614.) Notably, the section regarding the frequency and length of contact between the patient and physician and the section regarding the clinical findings, including results of mental status examination that demonstrate the severity of the patient's mental impairments, are left blank. (Tr. 612.) Therefore, the ALJ's conclusion that Dr. Monosiet's opinion is conclusory and his assignment of little weight to the treating physician's opinion is supported by the record evidence.

Plaintiff argues that additional progress notes from Dr. Monosiet were submitted to the Appeals Council, revealing two office visits with Dr. Monosiet in June 2014. (Dkt. 18 at 22.) Although the June 2014 records are dated <u>before</u> the ALJ's July 24, 2014, decision, Plaintiff did not submit the records to the ALJ. (Tr. 616–619.) Rather, the records were submitted after the ALJ's decision and were submitted to the Appeals Council as part of Plaintiff's request to review the ALJ's decision. (Tr. 1–6.) On review, the Appeals Council found no reason to review the ALJ's decision, finding that the newly submitted evidence did not provide a basis for changing the ALJ's decision. (Tr. 2.) *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783–85 (11th Cir. 2014) (providing that the Appeals Council is not required to provide a detailed explanation of a claimant's new evidence when it denies a petition for review and that it is sufficient for the Appeals Council to simply state that it considered the additional evidence but that "the information did not provide a basis for changing the ALJ's decision"). Notably, however, Plaintiff does not challenge the Appeals Council's decision or raise any argument regarding the Appeals Council's

review. Therefore, Plaintiff's argument that the ALJ failed to assign weight to any opinion that was not before the ALJ is without merit.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on June 14, 2017.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record